Case 4:24-cv-04262   Document 18   Filed on 11/06/25 in TXSD   Page 1 of 5
United States District Court
Southern District of Texas
**ENTERED**
November 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. LAKEISHA MENIFEE, | § § § | |
| *Plaintiff*, | § | |
| VS. | § § | CIVIL ACTION NO. 4:24-CV-04262 |
| T-MOBILE PV/SS PCS LLC, T-MOBILE, T-MOBILE FOR BUSINESS, | § § § § | |
| *Defendants*. | § § | |

# ORDER

Pending before this Court is Defendant T-Mobile PV/SS PCS LLC, T-Mobile, and T-Mobile for Business's (collectively, "T-Mobile") Renewed Motion to Dismiss for Improper Venue and Lack of Subject Matter Jurisdiction (Doc. No. 16). On March 19, 2025, this case was automatically stayed due to bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas. (Doc. No. 13). On May 30, 2025, however, the stay was lifted due to the Fifth Circuit's holding in *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994). (Doc. No. 14). The Court permitted the Parties to freely re-urge any previous motions, and T-Mobile re-urged this Motion to Dismiss. (Doc. No. 16). Considering the arguments and relevant legal standards, T-Mobile's Motion to Dismiss (Doc. No. 16) is hereby **GRANTED**.

## I. BACKGROUND

This case concerns "gang stalking" allegations that T-Mobile breached its fiduciary duty by overcharging Plaintiff's account and allowing "the police and judicial officials" to access her mobile device. (Doc. No. 1-5). T-Mobile seeks to dismiss the case for lack of subject matter

jurisdiction and improper venue due to valid arbitration clauses. (Doc. No. 16-3). Plaintiff did not file a response.[1]

T-Mobile argues that when Plaintiff signed up for mobile service, Plaintiff entered into three service agreements and two equipment installation agreements. *See, e.g.*, (Doc. Nos. 16-2, 16-3). The three service agreements incorporate the T-Mobile Terms and Conditions, which state that "any and all claims or disputes, of any nature, including tort or statutory claims, in any way related to or concerning the agreement, our privacy notice, privacy or data security practices, our services, devices or products, including any billing disputes, will be resolved by individual binding arbitration or in small claims court." (Doc. No. 16-5 at 7). The Terms and Conditions require the arbitration to be administered for the American Arbitration Association. (*Id.* at 7–10). The service agreements, in addition to incorporating the Terms and Conditions, state that "T-Mobile requires individual arbitration of disputes unless you opt-out within 30 days of activation." *See, e.g.*, (Doc. No. 16-2 at 2). The equipment installation agreements also contain an arbitration agreement. (Doc. No. 16-3).

## II. Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Ordinarily, both steps are questions for the Court. *Id.* However, where

---

[1] Pursuant to Local Rule 7(D), parties are expected to respond to any opposed motion within 21 days from the date the motion is filed with the Clerk's Office. "Failure to respond to a motion will be taken as a representation of no opposition." Local Rule 7(D). Nevertheless, the Court does not rely solely on Plaintiff's lack of response in ordering this case to arbitration.

the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Env't Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of an agreement to arbitrate that meets "all of the requisite contract elements." *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Whether parties entered a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 201 (5th Cir. 2016).

### III. ANALYSIS

The Court must determine (1) whether an arbitration agreement exists between the Plaintiff and T-Mobile and (2) whether the subject of this dispute falls within the arbitration agreement. The Court holds that the valid service agreements include a broad arbitration clause that cover the subject of this litigation.

First, Plaintiff entered into three service agreements with T-Mobile. *See* (Doc. No. 16-2). The service agreements stated that "by accepting this form, activating or using T-Mobile service," Plaintiff would be subject to the T-Mobile Terms and Conditions. (*Id.*). Those Terms and Conditions included a clear arbitration agreement. (Doc. No. 16-5). The Terms and Conditions also

3

states that "[t]his Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which you billing address in our records is location." (*Id.* at 10). The service agreements and equipment installation agreements show the Plaintiff's billing address was in Texas. (Doc. Nos. 16-2, 16-3). Thus, the Court will apply Texas common law to determine whether the Plaintiff and T-Mobile formed a contract under the service agreement.

In Texas, the elements of an enforceable contract are an offer, acceptance, consideration, mutual assent, and sufficient specification of terms to create. *Kennedy v. Equifax Info. Servs.*, 2023 WL 8656926, at *3 (W.D. Tex. Dec. 13, 2023) (citing *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Here, the service agreements listed Plaintiff's name and address. (Doc. No. 16-2). T-Mobile provided evidence that Plaintiff activated the T-Mobile products through extensive mobile service records. (Doc. No. 16-4). Most significantly, Plaintiff signed the service agreements with her name and the date of the signature. (Doc. No. 16-2). Under Texas law, the Court holds that the service agreements are existing contracts with arbitration clauses. *See also Kennedy*, 2023 WL 8656926, at *3 (holding that the exact same T-Mobile service agreement is existing under Texas contract law for the purpose of compelling arbitration).

Next, the Court must determine whether this dispute falls within the scope of the service agreements and the arbitration agreement within the Terms and Conditions. The Fifth Circuit embraces that "broad arbitration clauses [are] capable of expansive reach." *Ford Motor Co. v. Ables*, 207 Fed. App'x 443, 446 (5th Cir. 2006). The Terms and Conditions broadly state that "**any and all claims or disputes**, of any nature, including tort or statutory claims, **in any way related** to or concerning the agreement, our privacy notice, **privacy or data security practices**, our

4

**services**, **devices** or products, including any **billing disputes**, will be resolved by individual binding arbitration or in small claims court." (Doc. No. 16-5 at 7) (emphasis added). In her Complaint, among generic statements that she is a victim of "gang stalking," Plaintiff alleges that T-Mobile "allowed fraud to take place on [the account]," overcharged Plaintiff and "refuse[d] to investigate fraud," "granted access to police and judicial officials . . . to Plaintiff's Mobile services without a federal warrant or any claims of abuse." (Doc. No. 1-5 at ¶ 9). Not only are these claims "in any way related" to the service agreements with T-Mobile, but her claims directly implicate T-Mobile's privacy policy and data security practices and the charges on her account. (*Id.*). Thus, the Court holds that her claims fall within the scope of the service agreements.

Finding that the Plaintiff entered into an agreement with T-Mobile that contained an arbitration clause and that this dispute falls within the scope of that arbitration clause, T-Mobile's Motion to Dismiss (Doc. No. 16) is hereby **GRANTED**. All of Plaintiff's claims are hereby **DISMISSED** without prejudice.

It is so ordered.

Signed on this the 6th day of November 2025.

Andrew S. Hanen
United States District Judge